UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JULIA C., | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    2:18-cv-00334-DBH |
| | ) |
| ANDREW M. SAUL, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant | ) |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the December 8, 2017, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 7-2.)[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of anxiety disorder and post-traumatic stress disorder (PTSD). (R. 18, 20-21.) The ALJ also found that Plaintiff's claims of borderline intellectual functioning, attention deficit hyperactivity disorder (ADHD), migraines, and stomach symptoms were not medically determinable impairments. (R. 19.)

Based on her review of the record, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but subject to the following non-exertional limitations: in an 8-hour workday, she could perform simple, routine tasks; never work with the general public; work in sight of coworkers, but no work requiring teamwork or collaborative work; and she could adapt to routine changes and make basic work decisions. (R. 23.)

Plaintiff has no past relevant work. Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the jobs of floor cleaner, dish washer and sandwich maker. (R. 31.)

**STANDARD OF REVIEW**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*,

819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred when she found that Plaintiff's alleged borderline intellectual functioning (BIF) was not a medically determinable impairment and when she rejected Plaintiff's related post-hearing vocational evidence. Plaintiff further argues the ALJ failed to provide good reasons for discounting the treating source opinions and that the ALJ improperly relied on opinion evidence that was based on an incomplete record.

### A.     Step 2

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms[,]" Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2015) ("SSR 96-7p"), at 133; *see also* 20 C.F.R. § 404.1508.

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of medically determinable impairments that are "severe" from a vocational

3

perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

Here, Plaintiff challenges the ALJ's finding that her alleged BIF does not constitute a medically determinable impairment. The ALJ found that Plaintiff's claim of BIF was not established as a medically determinable impairment because Plaintiff was not diagnosed by an acceptable medical source based upon appropriate laboratory testing and clinical findings. (R. 19-20.) Plaintiff points to IQ testing that was administered to Plaintiff in 2004 by Barbara Hirsch, M.S., N.C.S.P.,[2] when Plaintiff was 15 years old in support of her contention that the ALJ erred. (R. 508-13.) Plaintiff's Full Scale IQ score on the Universal Nonverbal Intelligence Test was 79, in the borderline range. (R. 510, 512.) Ms.

---

[2] Plaintiff argues that Ms. Hirsch is an "acceptable medical source" under 404.1513(a)(2). The ALJ did not appear to dispute that characterization in her decision.

4

Hirsch's evaluation noted that Plaintiff's IQ had previously been evaluated on the Wechsler Intelligence Scale for Children, with a Full Scale IQ score of 78 (in the borderline range) in 2001, and a Full Scale IQ score of 82 (in the low average range) in 1997. (R. 508-09, 512.) Ms. Hirsch found that the previous test results obtained from Plaintiff in 2001 and 1997 were "commensurate" with the 2004 result. (R. 512.) Ms. Hirsch, however, made no diagnosis of BIF in her evaluation of Plaintiff's test scores. (*See* R. 511-12.)

The ALJ was not required to characterize Plaintiff's condition as BIF despite the IQ scores. First, as noted by the ALJ, there is no indication in Plaintiff's medical record that any provider, including Ms. Hirsch, diagnosed Plaintiff with BIF. (R. 20.) Standing alone, IQ scores are not inherently indicative of diagnoses. *See, e.g., Mannix v. Astrue*, Civil No. 08-437-B-W, 2009 WL 3152880, at *3 (D. Me. Sept. 28, 2009), *rep. & rec. adopted*, 2009 WL 3631178 (D. Me. Oct. 30, 2009) (ALJ reasonably declined to assess an impairment of BIF based on the only IQ test result in the record where the examiner did not diagnose BIF).

Moreover, all the IQ scores were obtained before Plaintiff was 16 years of age. Under the Program Operations Manual System (POMS) DI 24515.055(D)(1),[3] IQ scores obtained between the ages of 7 and 16 are presumed to be current for only two years.[4] As

---

[3] POMS is a primary source of information used by Social Security personnel to process claims for benefits. *See* POMS Home Page, available at https://secure.ssa.gov/apps10/.

[4] IQ scores obtained at age 16 or older, on the other hand, may be considered current "provided they are compatible with the individual's current behavior." POMS DI 24515.055(D)(1). On July 19, 2019, the POMS was revised. The information regarding current IQ scores is now found at POMS DI 24583.060 (C)(1) and POMS DI 24583.055(I)(7).

noted above, Plaintiff was only 15 when Ms. Hirsch administered the Universal Nonverbal Intelligence Test in 2004. The record lacks evidence of any IQ testing of Plaintiff as an adult. The ALJ supportably discounted the childhood IQ scores in reaching her decision that Plaintiff's alleged BIF was not a medically determinable impairment.

In addition, the medical records demonstrate that, during the relevant period from Plaintiff's claimed date of onset in September, 2012, Plaintiff's providers consistently described Plaintiff as bright, articulate and intelligent, with intact cognitive functioning. (*See* R. 20, collecting citations to the record.) Plaintiff graduated from high school,[5] and she informed providers that she was taking college courses online and was approximately six months from earning an associate degree in healthcare administration. (*Id.*) Plaintiff also denied any difficulty with reading and writing; drives; cares for her children and manages household chores; has volunteered at a thrift shop and worked as a house cleaner for a friend; has been successful in learning and applying coping strategies and relaxation techniques through therapy; and is described by her providers as well-groomed, polite, cooperative, engaged, and pleasant. (*Id.*; R. 21, collecting citations to the record.)

Furthermore, when Mr. Hirsch evaluated Plaintiff in 2004, Plaintiff was working at McDonald's 18 to 20 hours per week while attending high school. (R. 20, 510, 512.) Moreover, in response to Plaintiff's expressed interest in pursuing a career in cosmetology, Ms. Hirsh recommended that Plaintiff meet with her guidance counselor regarding post-

---

[5] Although Plaintiff has a history of special education, and has sometimes attributed it to attentional difficulties, she has also explained her engagement in special education as related to her frequent absences in school due to an unrelated gastrointestinal condition. (Exs. 13F, 1-4; 11F, 1-8; 7F, 1; 15F, 1; 21F, 5-17; 32E).

secondary education. (*Id.*)

In sum, the record contains substantial evidence to support the ALJ's determination that Plaintiff's alleged BIF did not constitute a medically determinable impairment. As the ALJ effectively reasoned, while the IQ test results, obtained before Plaintiff was 16 years old, show Plaintiff to be in the borderline to low average range, the record lacks evidence of a diagnosis of BIF and the evidence of Plaintiff's activity and functioning level, including her progress toward a post-high school degree, does not support a BIF finding.

In addition, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")). Plaintiff has failed to identify any additional limitations resulting from the BIF that would have been included in Plaintiff's RFC. As the ALJ supportably observed, "any symptoms would overlap with her severe mental impairments [anxiety and posttraumatic stress disorder] and would be fully accommodated in her RFC limiting her to simple, routine work with social and adaptive limitations." (R. 20.)

## B. Vocational Expert

Plaintiff contends the ALJ erred when she rejected the opinions of David Meuse, a vocational expert, regarding Plaintiff's ability to perform the jobs identified by the testifying vocational expert. Mr. Meuse asserted in an affidavit that based on his assessment of Plaintiff's IQ scores, Plaintiff's aptitude for General Learning Ability is such that she does not have the aptitude to perform the identified jobs. (R. 543-44.) Plaintiff's arguments are unpersuasive.

Essentially, Mr. Meuse offered evidence of Plaintiff's limitations related to Plaintiff's alleged BIF, which condition the ALJ supportably found was not a medically determinable impairment. Plaintiff thus attempts to use a vocational expert to challenge the ALJ's RFC finding by citing evidence Plaintiff and evidently the vocational expert believe the ALJ did not properly assess. To require an ALJ to impose vocational limitations based on a vocational expert's assessment of certain portions of the medical record, rather than the vocational expert's assessment of the ALJ's RFC finding, would be inconsistent with the role of a vocational expert and contrary to established precedent that it is the ALJ's responsibility, and not the responsibility of a vocational expert, to assess a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Gilson v. Colvin*, No. 1:12-cv-376-GZS, 2013 WL 5674359, at *2 (D. Me., Oct. 17, 2013) ("the question of a claimant's RFC is among the issues reserved to the commissioner"); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) ("the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts"). As the ALJ wrote, "[t]he claimant's RFC, and not an unsupported

8

statement as to her General Learning Ability, describes the claimant's maximum functional abilities at work tasks." (R. 31.)

**C.	Treating Source Opinion**

Plaintiff argues the ALJ erred when she discounted the opinion of Plaintiff's treating physician, Kristen Silvia, M.D. Dr. Silvia completed a mental RFC checklist questionnaire, dated February 28, 2017, in which she noted Plaintiff had numerous symptoms, was unable to meet competitive standards, had no useful ability to function in many areas including within the mental abilities and aptitudes needed to do unskilled work, and would miss work more than four days per month. (R. 28, 1701-06.) Dr. Silvia stated that the psychological limitations included in her report existed as of September 1, 2012. (R. 1706.) Dr. Silvia also co-signed a similar opinion written by Courtney Wowk, L.C.S.W. in February 2017. (R. 1695-1700.)

The ALJ noted that Dr. Silvia, who had been treating Plaintiff for a little over two years at the time of her assessment, did not explain her retroactive opinion. (R. 29.) The ALJ found that Dr. Silvia "identified multiple signs and symptoms that [were] not reflected in her treating notes or in the medical records as a whole," and "provided little narrative support for her opinions, focused on the [Plaintiff] self-report, and did not appear to adequately consider the [Plaintiff's] overall unremarkable mental status examinations, improvements with conservative treatment, impact of significant psychosocial stressors, and engagement in a wide variety of daily activities …." (*Id*.) Because she found that Dr. Silvia's reports "greatly overstated" the Plaintiff's limitations from her severe anxiety disorder and PTSD and were "overall inconsistent with the evidence of the record as a

9

whole," the ALJ's gave Dr. Silvia's opinions very little weight. (*Id.*)

In general, an ALJ may not substitute her judgment for that of an expert, nor translate raw medical data into an RFC assessment. *See, e.g., Nguyen*, 172 F.3d at 35; *Manso-Pizzaro*, 67 F.3d at 16. A "treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Gilson*, 2013 WL 5674359, at *2 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). An ALJ is not required to consider a treating physician's opinion controlling, however. *See Bowker v. Comm'r, Soc. Sec. Admin.*, No. 2:13-cv-122-DBH, 2014 WL 220733, *3 (Jan. 21, 2014) (fact that some of treating physician's opinions were inconsistent with other medical evidence in the record "deprives them of controlling weight"). The question of a claimant's RFC is, moreover, "among the issues reserved to the commissioner, with respect to which even the opinion of a treating source is entitled to no 'special significance' and cannot be assigned controlling weight." *Gilson* at *2 (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

The ALJ was free to decline to adopt Dr. Silvia's RFC assessment here, "so long as she supplied 'good reasons' for doing so." *Vining v. Astrue*, 720 F. Supp. 2d 126, 134 (D. Me. 2010) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). In her decision, the ALJ considered, but rejected, Dr. Silvia's mental RFC because (i) Dr. Silvia's care of the Plaintiff focused primarily on the Plaintiff's Suboxone therapy and recovery from opiate addiction; (ii) Dr. Silvia's RFC assessment did not explain the retroactivity of the opinion

or consider the Plaintiff's active substance abuse during much of the time prior to her initiation of Suboxone treatment with Dr. Silvia; (iii) many of the symptoms identified by Dr. Silvia in her RFC assessment were not reflected in her treating notes or in the medical records as a whole; and (iv) Dr. Silvia focused on Plaintiff's self-report without adequately considering the Plaintiff's "overall unremarkable mental status examinations, improvements with conservative treatment, impact of significant psychosocial stressors, and engagement in a wide variety of daily activities …." (R. 28-29.) The ALJ's reasons for rejecting Dr. Silvia's mental RFC assessment are supported by substantial evidence of record and constitute good reasons. (*See* citations to the record collected at R. 20-22, 24-27.) Nothing further was required.[6]

**D.     Opinion Evidence**

Plaintiff argues the ALJ impermissibly gave great weight to the opinion of the state agency psychological consultant on reconsideration, Susan Lichtman, Ph.D., who performed a review of the evidence through September 2016. (R. 27-27, 152-63.) Dr. Lichtman opined that Plaintiff could perform simple tasks and procedures and be reliable and sustain simple tasks in two-hour blocks at a consistent pace without significant interruption from mental symptoms over a normal workday/week. (R. 27, 162.)

---

[6] Plaintiff's argument that the ALJ erred because Dr. Silvia's opinion was supported by other opinion evidence in the record is also unconvincing. An opinion is not entitled to great weight simply because it is consistent with other medical opinions. *See Anderson*, 2012 WL 5256294, at *10 (ALJ supplied good reasons for deeming treating sources' assessments inconsistent with the record as a whole, even though he acknowledged that they were consistent with each other); *see also Applebee v. Berryhill*, No. 17-00003, 2017 WL 6523138, at *9 (D. Me. Dec. 20, 2017), *rep. & rec. adopted*, 2018 WL 1548684 (D. Me. Mar. 29, 2018), *aff'd*, 744 F. App'x 6 (1st Cir. 2018) ("the fact that an opinion may be consistent with other opinions of record does not in itself undermine an ALJ's finding that it is inconsistent with the record as a whole, including findings on examination and notations in underlying treatment notes").

Following Dr. Lichtman's review of the medical records through September 2016, Plaintiff submitted additional treatment records from subsequent visits to providers, as well as the RFC assessments of Dr. Silvia (and Ms. Wowk). Plaintiff argues that the ALJ erred when she relied on Dr. Lichtman's analysis in formulating Plaintiff's RFC assessment because the record Dr. Lichtman reviewed was incomplete.

An ALJ is not precluded from relying on a state agency physician's opinion based on an earlier record unless later submitted evidence reasonably generates questions about the reliability of the opinion. *See Anderson v. Astrue*, No. 1:11-cv-476, 2012 WL 5256294, at *3 (D. Me. Sept. 27, 2012), *rep. & rec. adopted*, 2012 WL 5252259 (D. Me. Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. June 7, 2013).

As explained above, the ALJ supportably discounted Dr. Silvia's (and Ms. Wowk's) later-submitted opinion evidence. *See also Bailey v. Colvin*, No. 2:13-cv-57-GZS, 2014 WL 334480, at *3 (D. Me. Jan. 29, 2014) (ALJ entitled to reject treating physician's conclusions in favor of state agency reviewing physician's where the ALJ provided sufficient reasons for doing so). Given that the ALJ supportably discounted Dr. Silvia's mental RFC assessment, the fact that Dr. Lichtman "did not see it has no bearing on the question of whether [her] own report can serve as substantial evidence of the [P]laintiff's mental RFC." *Vining*, 720 F. Supp. 2d at 133.

The subsequent treatment records of Dr. Silvia and other providers, moreover, are consistent with prior treatment records considered by Dr. Lichtman. Records through September 2016 (the period analyzed by Dr. Lichtman) note Plaintiff's reports of increased anxiety and agoraphobia, including her reports that she has difficulty going out in public,

that she did not leave her home alone, that she had social isolation, that she was unable to keep a regular schedule, and that she had some of her therapy sessions in her home. (R. 152, 157-58.) Records after September 2016 note Plaintiff's report of her mood and affect as anxious, that she continued to be limited in social situations, and that she had trouble leaving the house. (R. 1833, 1842, 1853, 1864, 1880, 2224, 2083-182, 2183-228.) The subsequent records are not qualitatively different from those reviewed by Dr. Lichtman, and Plaintiff has not shown that it was unreasonable for the ALJ to conclude that consideration of the records would not have altered Dr. Lichtman's opinion. As such, the ALJ was not precluded from relying on Dr. Lichtman's assessment. *See Anderson*, 2012 WL 5256294, at *3.[7]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request shall be filed within fourteen (14) days after the filing of the objection.

---

[7] Plaintiff also argues that Dr. Lichtman did not review Plaintiff's educational record, including the psychoeducational analysis conducted by Ms. Hirsch in 2004. The educational record predates Plaintiff's alleged onset date by over six years. In addition, to the extent Plaintiff contends that Dr. Lichtman should have considered Plaintiff's IQ scores as reflective of an impairment, as explained above, the ALJ reasonably determined that the evidence did not establish a medically determinable impairment during the period considered by Dr. Lichtman.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

>/s/ John C. Nivison
>U.S. Magistrate Judge

Dated this 16th day of August, 2019.